## FREDERICK HARBERS *et al.*

*v.*

## JOHN TRIBBY.

1. CONTRACT—*procuring enlistment—construction.* Where a party was employed to procure enlistments in the military service of the United States for the benefit of a town, so as to exempt it from draft in the late civil war, and the party so enlisting was to receive $400 for each man so enlisted, and credited to the town before the day of the draft: *Held,* that the plaintiff, to recover under such contract, must not only show that he procured an enlistment, but, also, that the same was credited to the town before the day set for the draft, by competent proof.

2. EVIDENCE—*certificates of army officers.* In an action to recover a stipulated compensation for an enlistment for the benefit of a certain town, the plaintiff read in evidence, against defendant's objection, the certificate, not attested by any seal of office, of an enlisting officer of the United States, and a certificate of the acting assistant provost-marshal for the State of

Illinois, without official seal, to show the fact of enlistment to the credit of the town: *Held,* that there was no law making such certificates evidence in the courts of this State in controversies between its citizens.

3. Evidence—*official character.* In such a case the fact that a person is an officer of the United States army, with power to give certificates of enlistment, can not be shown by proof that he acted as such. A certificate under the seal of the war department is the best evidence of his official character and authority.

Writ of Error to the Circuit Court of Woodford County; the Hon. S. L. Richmond, Judge, presiding.

Messrs. Burns, Cassel & Puterbaugh, for the plaintiffs in error.

Messrs. Bangs & Shaw, for the defendant in error.

Mr. Justice Breese delivered the opinion of the Court:

This was an action of assumpsit in the Woodford Circuit Court, on an alleged promise by defendants, to pay plaintiff $400 for each man he should procure to be enlisted, and credited to the town of Lynn, when the credit should be given, so as to exempt that town from a draft for the quota thereof, under the proclamation of the President of the United States calling for 300,000 men. The defendants were subject to this draft, and were desirous of avoiding it in the manner alleged. The declaration contains, also, the common counts for work and labor, etc., but the cause was tried on the special count, resulting in a verdict and judgment for the plaintiff for $532.37, being the $400 claimed, and interest thereon at six per cent per annum.

To reverse this judgment the defendants bring the record here by writ of error, and have assigned various errors, the most important of which is, admitting improper evidence.

The plaintiff, to sustain the issue on his part, introduced in evidence, against the objection of defendants, the certificate of a person signing himself Lieut. Col. Lowe, purporting to be a certificate of enlistment; and the plaintiff testified that he was a regular enlisting officer of the United States, at Cairo. He also introduced in evidence, against the objection of the de-

58            HARBERS *et al.* *v.* TRIBBY.            [Sept. T.,

Opinion of the Court.

fendants, a certificate signed "James Oakes, Brev't. Brig. Gen. and A. A. P. M. G., Ill.," dated August 11, 1865, addressed to Messrs. Grover, Ayers & Son, Springfield, Ill., certifying that James Wilson, colored, of a certain height, "enlisted, January 25, 1865, at Paducah, Ky., by Lieut. D. McIvor, 122d Infantry, Ill. Volunteers, A. C. M., dist. West Kentucky," and that he had been credited on the records of his office to the town of Lynn, county of Woodford, State of Illinois, sub-district 50, in eighth congressional district. He also proved, by N. Bateman, the execution of this certificate by Oakes, and that he was, at its date, "acting assistant provost-marshal general" of Illinois, but was not provost-marshal of the eighth district of Illinois. Capt. Isaac Keys was provost-marshal of the eighth district. Witness also said the credit of enlistment made by Oakes, should have appeared on the books of the district marshal. Reports to districts were not regularly made to district marshals, but transcripts were furnished from his books when requested.

We are not advised of any law making these certificates evidence in the courts of this State, in controversies between its citizens. We have a statute, long since enacted, and of frequent application, making the official certificates of registers and receivers of the several land offices of the United States evidence in our courts, of certain facts. The certificate of no other officials of the Federal government are such, unless, of certain officers attested under their seal of office.

There is no evidence that Lowe was an officer of the United States army, and competent, from his position, to give such a certificate. His official character is not evidenced by his acts, for it is notorious, that during the late conflict between the States, official power was assumed in many cases. A certificate, under the seal of the war department, would be the best evidence of his official character and authority. The same may be said of Oakes' certificate; and, in addition, it may be said of that, it appears to be a mere private matter, intended for the benefit of Grover, Ayers & Co., of Springfield, to whom it was addressed. And beside all this, neither certificate shows

the man was, in fact, credited to the town of Lynn; and there is nothing in the record to show he was so credited prior to February 14, on which day the draft was to take place. The sense and meaning of the contract between these parties is, that plaintiff was not only to procure the men, but to see they were credited to the town of Lynn. If they were not so credited, the object of his employment would not have been attained. In examining the whole evidence, we are constrained to believe the agreement of the parties was, that plaintiff, for every man he procured, should produce the certificate of the provost-marshal of the eighth district, through whom, and through whom only, quotas were adjusted and credits given. We think the testimony greatly preponderates in that direction. It is proved the money was deposited with Pulsifer & Co., to be drawn out on that express condition.

So far as the instructions do not conform to the views here presented they were erroneous.

The judgment is reversed and the cause remanded.

*Judgment reversed.*